```
IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF NEW JERSEY
          CAMDEN VICINAGE
```

| | |
|---|---|
| LIZ CASTILLOVEITIA O/B/O B.O.M., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Civil No. 17-12894 (RMB) <br><br> **MEMORANDUM OPINION AND ORDER** |

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon an appeal filed by Plaintiff Liz Castilloveitia ("Plaintiff") on behalf of her minor son, B.O.M. ("Claimant"), seeking judicial review of the determination denying Plaintiff's application for Supplemental Security Income ("SSI") benefits.

For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge (the "ALJ") and remands for proceedings consistent with this Memorandum Opinion and Order.

I. **PROCEDURAL HISTORY**

On June 19, 2013, Plaintiff protectively filed an application for childhood supplemental security income, under

Title XVI of the Social Security Act, on behalf of Claimant, alleging disability due to asthma and autisim spectrum disorder, with an onset date of June 3, 2013. The claim was initially denied on September 17, 2013, and again upon reconsideration on January 31, 2014. Record of Proceedings ("R.P.") at 20. Thereafter, Plaintiff requested a hearing, which was held before the Honorable Daniel N. Shellhamer, ALJ, on January 7, 2016. Plaintiff appeared at the hearing, on behalf of Claimant, and was represented by counsel, David S. Bross.

Following the formal hearing, the ALJ issued a decision on May 20, 2016, which denied Plaintiff's claim based on the ALJ's determination that Claimant did not suffer from "an impairment or combination of impairments" that result in "marked" limitations in two domains of functioning or "extreme" limitations in one domain of function. [R.P., p. 35]. The Appeals Council denied Plaintiff's request for review, thus rendering the ALJ's decision as final. [R.P., p. 1-4]. Plaintiff now seeks this Court's review.

## II. STANDARD OF REVIEW

In social security appeals, the district court must uphold the Commissioner's decision if it is supported by substantial evidence. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir.1989). Substantial evidence exists when there is "more than a mere

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir.1995)(quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the ALJ's findings of fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). A district court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.1992) (citation omitted). Thus, a district court is bound by the findings of the ALJ that are supported by substantial evidence, "even if [it] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999)(citations omitted). To determine if such substantial evidence exists, the district court must review the record as a whole. See 5 U.S.C. § 706.

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228

F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

Under the Social Security Act, a child under 18 years old is eligible for SSI if he or she is "disabled," meaning he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child is disabled, the regulations establish a three-step sequential process. See T.C. ex rel. Z.C. v. Comm'r of Soc. Sec., 497 F. App'x 158, 160 (3d Cir. 2012)(citing 20 C.F.R. § 416.924(a)).

At step one, the ALJ considers whether the child is engaging in substantial gainful activity. Id. If so, the child is not disabled. If not, the ALJ proceeds to step two, determining whether the child has a medically determinable severe impairment or combination of impairments. Id. If not, the child is not disabled. If so, the ALJ proceeds to step three. Id.

At step three, the ALJ assesses whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment set forth in 20 C.F.R. § 416.924(d). An impairment or combination of medical

4

impairments "medically equals" a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). An impairment or combination of impairments "functionally equals" a listed impairment if the child has "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A "marked" limitation exists when it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities," and is considered "'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation exists when it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities," and is considered "more than marked" but not necessarily equivalent to "a total lack or loss of ability to function." 20 C.F.R. § 416. 926a (e)(3).

The ALJ determines the child's ability to function in each domain based on "all the relevant factors," including the effectiveness of medication on the child, the ability of the

5

child to function in school, and the effects of structured settings on the performance of the child. 20 C.F.R. § 416.926a(a)(1)-(3). If the ALJ finds that the requirements of the third step are met, the child is considered disabled under the Social Security Act for purposes of SSI. 20 C.F.R. § 416.924(d)(1).

III. **FACTUAL BACKGROUND**

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Claimant was born on July 9, 2010 and was two years and ten months old as of the alleged onset date, June 3, 2013. Plaintiff alleges that Claimant suffers from a combination of conditions, specifically asthma and autism spectrum disorder.

*A. Asthma*

According to Plaintiff, Claimant first presented symptoms of asthma in August 2010 and was prescribed a home nebulizer to treat his symptoms. Medical records indicate that Claimant was treated for respiratory infections, heavy breathing, coughing, and wheezing on multiple occasions. Claimant's symptoms were treated, at various times, with a nebulizer, albuterol, and

6

Pulmicort. By July 2012, at least two physicians at Rainbow Pediatrics had treated Claimant for asthma.

In October 2013, Claimant began treatment with a pulmonologist, Dr. Caitlin Papastamelos, M.D., who diagnosed Claimant with reactive airway disease and prescribed Pulmicort treatments at least once a day. [R.P., p. 573-575]. Dr. Papastamelos noted that Claimant's mother reported that Claimant was hyperactive and jittery, making it hard to administer medication. Dr. Papastamelos also noted that she thought some of Claimant's cough was exacerbated by his autism. In January 2015, Dr. Papastamelos recorded that Claimant had been treated for respiratory issues a number of times over the fall and winter. On at least one occasion, Claimant needed to be taken to the emergency room at Shore Medical Center for treatment. As of January 2015, Dr. Papastamelos stated that "at this point, I don't see evidence that allergies are playing a role," but opined that she "still think[s] that he stands a very good chance of growing out of his tendency to severe cough and intermittent wheezing with colds, over the next 2 years. Id. at 568. In December 2015, Claimant was again treated at Rainbow

Pediatrics for wheezing and an inability to sleep at night due to a persistent cough. [R.P., p. 793].

### B. *Autism Spectrum Disorder*

Beginning in December 2011, Claimant was deemed eligible for participation in the New Jersey Early Intervention System due to delays in all developmental areas except for fine motor skills. [R.P., p. 257]. In February 2012, Plaintiff brought Claimant to Dr. Divya Khurana, M.D., for neurological consultation due to her concerns about Claimant's alleged speech and motor delays. In Dr. Khurana's report, she notes that "while [Claimant] does have some repetitive behaviors and mild speech delay, he does not have the difficulties in social interaction that one would expect in a child with typical autism spectrum disorder." Id. Although Dr. Khurana's impression was that Claimant "appears to be doing quite well," Dr. Khurana noted that she "would like him to continue early intervention and speech therapy for the time being." Id.

In May 2013, Claimant's early intervention provider referred him to Children's Specialized Hospital due to his parents' concerns regarding a potential autism diagnosis. R.P. at 218. At the time, Claimant had a reported history of inconsistent eye contact and sensory issues. Id. Claimant was evaluated by Dr. Lauren Blann, CRNP, who noted that Claimant exhibited deficits in reciprocal social interaction and did not

8

consistently respond to his name. Id. at 223-224. Ms. Blann observed that Claimant "engaged in unusual and repetitive language" and that his "play skills are not considered to be appropriate for his developmental level." Id. Ms. Blann also noted that Claimant almost constantly focused on spinning wheels, ceiling fans and shutting doors. Id. Based on her observations, Ms. Blann concluded that Claimant "is a child who meets the criteria for diagnosis of autism spectrum disorder." Id.

In January 2015, Ms. Blann and Dr. Yvette Janvier completed a Medical Source Statement (Child), which noted a follow-up appointment with Claimant in July 2014 and reaffirmed the diagnosis of autism. [R.P., p. 416]. The report described Claimant as demonstrating poor eye contact, inattention, and repetitive play. Id. The report added that Claimant's "social skills are still in need of improvement" and noted that Claimant was still not toilet trained as of July 2014. Although Ms. Blann and Dr. Janvier marked Claimant as "limited, but satisfactory" in most categories, they noted that Claimant is "seriously limited, and is not satisfactory" in "taking care of personal hygiene" and "caring for physical needs (e.g., dressing, eating)." Id. at 416-419. Ultimately, Ms. Blann and Dr. Janvier concluded (1) that Claimant's impairment met the

9

criteria of Medical Listing 112.10 (autism), (2) that his symptoms would prevent him from performing normal, age appropriate activities on a frequent (more than 3-4 days per month) basis, and (4) that his impairments could be expected to last at least 12 months. Id. at 414-422.

In January 2016, Mary Matyas, APN, evaluated Claimant and reported that he still had significant delays with activities of daily living, including feeding himself, dressing, bathing, brushing teeth. [R.P., p. 923-928]. Ms. Matyas concluded that Claimant "continues to meet criteria for Autism Spectrum Disorder." Id. at 927. Ms. Matyas noted that Claimant exhibited sensory defensiveness to loud noises and cutting of his hair, and that his parents indicated that he exhibited aggression and frustration at home. Ms. Matyas added that "[h]e is very bright and does well academically, but he continues to meet criteria with social communications as well as repetitive restrictive behaviors." Id.

## IV. DISCUSSION

At step one of the analysis, the ALJ concluded that Claimant had not engaged in in substantial gainful activity since June 19, 2013. At step two, the ALJ determined that Claimant's asthma and autism spectrum disorder are severe impairments, However, at step three, the ALJ denied Plaintiff's

10

claim for SSI benefits, finding that "the severity of the claimant's impairments, even in combination, does not equal the severity contemplated in the listings" in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926). [R.P., p. 24].

On appeal, Plaintiff argues that the ALJ erred in failing to find that Claimant's impairments met the specific requirements of listings 103.03 (asthma) or 112.10 (autism spectrum disorder). Plaintiff contends that the ALJ improperly weighed the credibility of the various medical experts. Specifically, Plaintiff argues that the ALJ did not address the discrepancies within the medical expert's interrogatory responses. Plaintiff also argues that the ALJ erred in finding that Plaintiff's own testimony lacked credibility.

In reaching his decision, the ALJ accorded little weight to the opinions of Plaintiff, Nurse Blann, or Dr. Janvier, concluding that these opinions were "inconsistent with the evidence of the record, which indicates that the Claimant is a high functioning autistic individual that is very intelligent and has shown improvement with therapy and participation in a program for autistic children." [R.P., p. 27]. The ALJ also stated that these opinions lacked credibility because Nurse Blann and Dr. Janvier evaluated Claimant on the basis of only

11

two meetings. Counterintuitively, instead, the ALJ relied upon the opinions of Brittany Bybel, Claimant's kindergarten teacher, and Dr. Daniel Wiseman, M.D., a medical expert who never personally examined Claimant, but reviewed the medical records and responded to a medical interrogatory.

Moreover, the ALJ's decision, "that the claimant's impairments do not meet, medically equal or functionally equal the requirements of any Listing," relies heavily upon Dr. Wiseman's expert interrogatory responses [R.P., p. 28]. However, absent from the ALJ's opinion is any discussion of Dr. Wiseman's contradictory statement that Claimant "met [Listing] #103.03B from age 4 months to (about) age 3 but no longer." [R.P., p. 916]. Dr. Wiseman's interrogatory response provides this statement without any substantive explanation or clarification. Dr. Wiseman separately states that "ALL of the problems described (above) are serious and potentially limiting but in every case, he seems to be manageing (sic) them, well, and improving with time and therapy." [R.P., p. 914]. The ALJ also relied heavily on the initial determination of Dr. Katherine Azaro, M.D., and the record on reconsideration by Dr. Samuel Kaye, neither of whom personally evaluated Claimant.

Although there may be good reasons for the denial of Plaintiff's request for SSI benefits, the ALJ's decision does

not clearly state what contradictory medical evidence formed the basis for the denial of benefits. Specifically, the ALJ does not explain why the opinions of Nurse Blann and Dr. Janvier were rejected because "their opinions are based only on their initial evaluation and one follow up appointment," yet the opinion of Dr. Wiseman was accepted, even though he never personally examined Claimant. In Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000), the Third Circuit held that "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." It is not clear what substantive contradictory medical evidence forms the basis for rejecting the treating physicians' opinions, while accepting the lay opinion of Ms. Bybel and the ultimate conclusions of Dr. Wiseman, Dr. Azaro, and Dr. Kaye. In this regard, the ALJ's decision does not adequately explain the reasoning for his credibility determinations in weighing one opinion over another. The Court is thus constrained to remand.

## V. CONCLUSION

Because the ALJ failed to adequately explain his credibility determinations and his reasons for rejecting the treating physicians' opinions, the Court cannot determine at

13

this stage whether the Commissioner's decision is supported by substantial evidence. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001)(holding "to the extent that the ALJ reaches a finding contradictory to that of [the claimant's] treating physicians, he must explain the reasoning behind such a finding"). Although there may be facts in the record to support the ALJ's conclusions, the Court is unable to determine the basis for the ALJ's denial without more detailed discussion of the reasoning behind that decision.  Thus, the Court will remand for further proceedings.  Because remand is warranted on this issue, the court need not reach the Plaintiff's additional arguments.

**ACCORDINGLY**, it is on this **28th** day of **December 2018**, hereby

**ORDERED** that the decision of the Administrative Law Judge is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order; and it is further

**ORDERED** that the Clerk of the Court shall close this case.

DATED: December 28, 2018

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE